## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**VICTOR TAPIA, LEIGH ZENDER, and
JONATHAN SISNEROS,**

       **Plaintiffs,**

    **vs.**                                  **Civ. No. 14-939 JCH/GBW**

**DIRECTV, INC., DIRECTV, LLC, and
MASTEC NORTH AMERICA, INC.,**

       **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendants' Motion To Dismiss Plaintiffs' Complaint* [Doc. 12], and *Plaintiffs' Conditional Motion for Time Within Which To Seek Leave To Amend Should Court Grant Defendants' Motion To Dismiss* [Doc. 29].   Plaintiffs assert one count of violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 ("FLSA").  Plaintiffs allege that Defendants violated the FLSA by failing to pay all minimum wage and overtime wages due to Plaintiffs, failing to properly calculate Plaintiffs' regular rate of pay for determining the overtime premium pay owed, and improperly deducting money from Plaintiffs' pay.

Having reviewed the motions, briefs, and relevant law, the Court concludes that Defendants' motion to dismiss should be denied.  Based on that conclusion, the Court will deny as moot Plaintiffs' conditional motion to amend.

## FACTUAL BACKGROUND

The following summary is taken from the Complaint, viewing the facts in the light most favorable to Plaintiffs and accepting as true all well-pleaded facts. *See Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008). The Court does not accept as true any legal conclusions asserted in the Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In a "fissured employment" scheme, DIRECTV[1] oversees a network of Providers who supply DIRECTV with a workforce of technicians, either by serving as their employer or by subcontracting with technicians dubbed as independent contractors. The Provider network includes principal intermediaries called Home Service Providers, secondary intermediaries called Secondary Providers, and subcontractors. MasTec North America, Inc., is a Home Service Provider. Plaintiffs work as technicians installing and repairing DIRECTV satellite television service.

DIRECTV controls the network of Providers through a variety of means, including detailed "Provider Agreements" (including Home Services Provider Agreements, Services Provider Agreements, and Secondary Provider Agreements of Equipment Installation and Service). The Provider Agreements establish effectively identical business relationships between DIRECTV and each Home Service Provider and subcontractor. Each Provider Agreement contains essentially the same policies, procedures, performance standards, and payment method requirement—specifying DIRECTV's mandatory policies and procedures and obligating DIRECTV's intermediaries to hand them down to the technicians. DIRECTV was the primary, if not the only, client of the Providers and was the source of substantially all of each Provider's income.

---

[1] Defendant DIRECTV, Inc. merged with DIRECTV Operations, LLC, to form DIRECTV, LLC, in 2011.

The Provider Agreements enable DIRECTV to control nearly every facet of the technician's work.  Plaintiffs were required to wear a uniform with DIRECTV insignia, to show customers a DIRECTV identification card, and to display DIRECTV insignia on vehicles driven to customers' homes; Plaintiffs were required to purchase these uniforms and insignia, typically from Defendants.  Plaintiffs were required to hold themselves out as agents of DIRECTV.

DIRECTV mandates particular methods and standards of installation, promulgating detailed instructions for how to complete installations and not giving Plaintiffs meaningful discretion in how they performed installations.  DIRECTV publishes training materials that technicians like Plaintiffs are required to review.  DIRECTV requires all technicians to obtain a certification from the Satellite Broadcasting & Communications Association; this requirement allows DIRECTV to mandate certain training for all technicians.

Plaintiffs typically started their workdays after receiving daily work schedules assigned through DIRECTV's dispatching systems.  DIRECTV assigned each technician a scope of work described in a Work Order that DIRECTV itself delivered to each technician via a centralized computer software system that DIRECTV controls.  Upon arriving at each job site, Plaintiffs were required to check in by telephone with DIRECTV via its dispatching system; at the end of each job Plaintiffs were required to report to DIRECTV that the installation was complete and then to work directly with DIRECTV employees to activate the customer's service.

Hiring is generally done at the Providers' level.  The Providers administered payroll and provided Plaintiffs with paychecks.

DIRECTV determined whether Plaintiffs' work merited compensation, including setting the rate of pay to the Providers for the Plaintiffs' work.  DIRECTV utilized a network of quality control personnel and field managers to oversee Plaintiffs' work.  DIRECTV and Providers'

quality control personnel reviewed Plaintiffs' work and Plaintiffs were subject to "chargebacks" and/or "rollbacks" based on those reviews.

Plaintiffs were paid pursuant to the piece-rate payment scheme utilized throughout DIRECTV's network.  Under this system, Plaintiffs were not paid for all hours they worked for Defendants, but were paid on a per-task basis for satisfactorily completing a DIRECTV-approved satellite installation.  The piece-rate system pays technicians only for certain enumerated "productive" tasks.  In addition to the tasks designated as compensable by DIRECTV, Plaintiffs performed other work each week, such as assembling satellite dishes, driving to and between job assignments, reviewing and receiving schedules, calling customers to confirm installations, obtaining required supplies, assisting other technicians with installations, performing required customer educations, contacting DIRECTV to report in or activate service, working on installations that were not completed, and working on "rollback" installations where Plaintiffs had to return and perform additional work on previously completed installations; Plaintiffs were not paid for these integral and indispensable tasks that were necessary to their principal activity of installing and repairing DIRECTV satellite television service.

Plaintiffs were subjected to "chargebacks," by which Defendants made deductions from Plaintiffs' pay for various reasons, many of which were beyond Plaintiffs' control—e.g., faulty equipment.  Plaintiffs were also required to purchase supplies necessary to perform installations—e.g., screws, poles, concrete, and cables.

Plaintiffs routinely worked more than forty hours per week for Defendants, but were not paid overtime.  Tapia alleges that he spent more than sixty hours per week performing tasks for Defendants, many of them unpaid.  Zender spent more than sixty hours per week performing such tasks.  Sisneros spent approximately fifty to sixty hours per week performing such tasks.

4

Defendants' policies and practices—including imposition of "chargebacks," failing to compensate for all hours worked, and failing to reimburse Plaintiffs for necessary business expenses—resulted in Plaintiffs being routinely subjected to an effective wage rate less than the applicable minimum wage.

## PROCEDURAL BACKGROUND

The Complaint sets forth the following procedural background.  Plaintiffs Tapia and Zender had previously opted in to a conditionally certified FLSA action in Louisiana, *Lang v. DIRECTV, et al.*, No. 10-1085-NJB (E.D. La.).  On August 30, 2013, the court decertified the class, dismissing opt-in plaintiffs without prejudice and ordering tolling of the statute of limitations for each opt-in plaintiff for sixty days from the date of that order.   Within that sixty-day period, Tapia and Zender filed an action in California, *Acfalle v. DIRECTV*, No. 13-8108 ABC (C.D. Calif. (filed Nov. 1, 2013)).  On July 22, 2014, the court severed plaintiffs with FLSA-only claims, dismissing without prejudice and tolling the statute of limitations for ninety days.  Within that ninety-day period, Tapia and Zander filed the Complaint in this Court (on Oct. 20, 2014).

Plaintiff Sisneros had filed a consent to become a party in *Arnold v. DIRECTV*, No. 10-0352-JAR (E.D. Mo.), originally filed on March 2, 2010.  That court directed decertification and dismissal without prejudice of some opt-in plaintiffs, including Sisneros, and ordered continued tolling of the statute of limitations for ninety days.   Within that ninety-day period, Sisneros joined this action.

## LEGAL STANDARDS

On a motion to dismiss, the court assesses the legal sufficiency of the allegations contained within the four corners of the complaint.  *Archuleta v. Wagner*, 523 F.3d 1278, 1281

(10th Cir. 2008).  Rule 8 requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The court accepts as true all well-pleaded facts, viewing them in the light most favorable to the plaintiff and allowing all reasonable inferences in favor of the plaintiff.  *Archuleta*, 523 F.3d at 1283.  This deference is inapplicable to legal conclusions in the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court "should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable."  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see Iqbal*, 556 U.S. at 678.  The court does not accept as true a legal conclusion couched as a factual allegation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The complaint "does not need detailed factual allegations," but the factual allegations "must be enough to raise a right to relief above the speculative level."  *Id*.  The complaint must go beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  Conclusory statements unsupported by factual allegations are not sufficient.  *Id*.; *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 555 (holding insufficient mere "labels and conclusions" and "formulaic recitation of the elements of a cause of action"); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

The allegations of fact must "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Archuleta*, 523 F.3d at 1281, 1283.  "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  *Robbins*, 519 F.3d at 1247.  The Tenth Circuit observed that "plausible" cannot mean

"likely to be true," but "must refer to the scope of the allegations in a complaint:  if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) on three grounds:  (I) failure to plead sufficient facts to support a reasonable inference that Plaintiffs actually received less than the minimum wages or overtime pay due; (II) failure to plead sufficient facts to show that DIRECTV or MasTec was Plaintiffs' employer under the FLSA; and (III) some claims against MasTec are time-barred.  [Doc. 12]  Defendants argue that the Complaint is "a generic, boilerplate pleading," which is "virtually identical to each of nearly forty other complaints that Plaintiffs' counsel has recently filed on behalf of hundreds of other current and former technicians … in states throughout the country."  [Doc. 13, p. 2]  Defendants argue that the Complaint is a "classic example of conclusory form pleading" which is "bereft of the particularized factual allegations necessary to satisfy the pleading standards" of *Iqbal* and *Twombly*.  [Doc. 13, p. 2]  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. v. Twombly*, 550 U.S 544 (2007).

Plaintiffs assert that, as a result of the economic realities imposed by Defendants' policies, DIRECTV and MasTec are Plaintiffs' "employers" under the FLSA's broad definition. [Doc. 28, p. 1]  Plaintiffs argue that the Complaint sets forth "detailed facts describing the top-down policies and procedures that controlled Plaintiffs' work, the manner in which those policies were administered through the Provider Network, and the piece-rate pay system that denied them wages required by law."  [Doc. 28, p. 1]  The Complaint alleges that Plaintiffs performed tasks

for which the piece-rate system did not compensate them, and that they regularly worked more than forty hours per week but were never paid time-and-a-half.  These allegations, together with the allegation of "chargebacks" and unreimbursed business expenses, resulted in Plaintiffs working "for an effective wage rate below the minimum wage."  [Doc. 28, p. 2]  Plaintiffs argue that the Complaint sufficiently alleges willfulness, so that the three-year statute of limitations for willful violation applies.

## I.  Sufficiency of Complaint on Minimum Wage and Overtime Claims

Defendants argue that the Complaint does not contain sufficient factual allegations "to support a plausible claim that any of them actually received less than the minimum wage, or was denied overtime pay for hours worked in excess of 40, with reference to work performed in any given workweek."  [Doc. 13, p. 14]

Count 1 of the Complaint asserts a violation for failure to pay overtime.  29 U.S.C. § 207(a)(1) provides:

> (a)(1)  Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

With respect to overtime, Defendants argue that it is not enough for Plaintiffs to allege that they "routinely worked more than 40 hours per week," and that Plaintiffs further "allege in conclusory fashion that each of them spent" in excess of 50 to 60 hours per week performing tasks for the benefit of Defendants, many of those hours unpaid.  [Doc. 13, pp. 9-10 (emphasis added)]  Defendants take issue with use of the word "routinely," and argue that Plaintiffs were required to

identify a specific workweek in which they worked more than 40 hours and were denied overtime pay.  The Court disagrees.

Defendants rely on a Ninth Circuit opinion for their argument that Plaintiffs were required to, and failed to, identify a specific workweek in which they worked more than 40 hours without being paid overtime.  [Doc. 13, pp. 14-15 (citing *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638 (9th Cir. 2014))]  The Court is not persuaded.  The complaint in *Landers* included generalized assertions of violations without factual detail.  *See Landers*, 771 F.3d at 645-46.  But the *Landers* court also recognized that a plaintiff "may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility."  *Id*. at 645.  And in a later decision, the Ninth Circuit reversed a district court decision requiring:  (1) detailed estimates of uncompensated time; (2) estimates of how often plaintiffs went uncompensated; and (3) the rate of pay at which the plaintiff normally worked.  *Boon v. Canon Bus. Sols., Inc.*, 592 Fed. Appx. 631, 632 (9th Cir. 2015) (unpublished).  Recognizing that *Landers* held that plaintiffs "must allege facts demonstrating that there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages," the *Boon* court held that this requirement was met when the plaintiff "identified tasks for which he was not paid and alleged that he regularly worked more than eight hours in a day and forty hours in a week."  *Id*.  The Court concludes that not even the Ninth Circuit requires a plaintiff to identify by date a specific workweek, as Defendants argue; in addition, the Court finds that Plaintiffs allege "other facts that will permit the court to find plausibility."  *Landers*, 771 F.3d at 645.

Defendants argue that the Complaint needed additional facts, and should:  "(1) state the values of the 'piece rates' they *were* paid; (2) quantify the number of estimated tasks/'pieces' that they performed each week, or even in one sample week; (3) quantify the amount of time they spent on purportedly 'non-compensable' tasks in a given day or week; or (4) provide an estimate of the number of hours for which they claim underpayment, and/or the dollar amounts of such underpayments."  [Doc. 13, p. 11]  The Court concludes that this level of factual specificity is not required.  *See Twombly*, 550 U.S. at 555 ("detailed factual allegations" are not required).  The degree of specificity necessary to establish plausibility and to give fair notice depends on the context.  *Robbins*, 519 F.3d at 1248.

Plaintiffs allege that they routinely worked more than forty hours per week for Defendants.  Each Plaintiff further alleges a specific number of hours worked per week—Tapia and Zender alleging more than sixty hours per week, and Sisneros fifty to sixty hours.  Plaintiffs allege that they were not paid for many of the tasks performed on Defendants' behalf, that these tasks were indispensable to their tasks of installation and repair, and that they performed these additional uncompensated tasks every week during the relevant time period.  Plaintiffs allege that they were not paid overtime for the additional hours.  Accepting these factual allegations as true, the Court concludes that Plaintiffs plausibly (not just speculatively) have a claim for relief for failure to pay overtime as required by the FLSA under 29 U.S.C. § 207(a)(1).  *See Robbins*, 519 F.3d at 1248.

Count 1 of the Complaint also asserts a claim that Defendants violated the FLSA by failing to pay minimum wage.  29 U.S.C. § 206(a) provides:

(a)  Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:

10

(1) except as otherwise provided in this section, not less than—

    (A) $5.85 an hour, beginning on the 60th day after May 25, 2007;
    (B) $6.55 an hour, beginning 12 months after that 60th day; and
    (C) $7.25 an hour, beginning 24 months after that 60th day.

Plaintiffs allege that they were routinely subjected to an effective wage rate less than the applicable minimum wage as a result of Defendants' policies and practices.  Under the piece-rate system, Plaintiffs were not paid for all hours worked, including hours spent performing tasks necessary to installation.  Plaintiffs were subjected to chargebacks.  Plaintiffs were required to make unreimbursed purchases of supplies necessary to perform installations.  Accepting these factual allegations as true, the Court concludes that Plaintiffs plausibly (not just speculatively) have a claim for relief for failure to pay minimum wage as required by the FLSA under 29 U.S.C. § 206(a).  *See Robbins*, 519 F.3d at 1248.

Determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  The Court concludes that the Complaint contains sufficiently detailed factual allegations to raise Plaintiffs' right to relief under Count 1 above the speculative level, going well beyond conclusory and threadbare recitals of the elements of a cause of action for failure to pay overtime and minimum wage.  The Court further concludes that the Complaint adequately informs Defendants of the actual grounds of Plaintiffs' claims.  *See Robbins*, 519 F.3d at 1247.

## II.  Joint Employment

The FLSA broadly defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  An employee may work for two employers simultaneously.  29 C.F.R. § 791.2(a).  "A determination of whether the

11

employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case." *Id*. Joint employment may be found if the facts show "that employment by one employer is not completely disassociated from employment by the other employer(s)." *Id.*

The "'striking breadth'" of the FLSA's definitions of "employ" and "employer" "'stretches the meaning of "employee" to cover some parties who might not qualify as such under a strict application of traditional agency principles.'" *Johnson v. Unified Gov't of Wyandotte Cty.*, 371 F.3d 723, 729 (10th Cir. 2004) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)). Analysis of whether Plaintiffs were employees of Defendants "is not limited by traditional common law concepts but focuses on the economic realities" of the situation. *Id*. (internal quotation marks omitted).

The Tenth Circuit explained the "economic realities" test in *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 506 (10th Cir. 2012). The test "seeks to look past technical, common-law concepts of the master and servant relationship to determine whether, as a matter of economic reality, a worker is dependent on a given employer." *Id.* "'The focal point … is whether the individual is *economically dependent* on the business to which he renders service, or is, as a matter of economic fact, in business for himself.'" *Id.* (quoting *Doty v. Elias*, 733 F.2d 720, 722-23 (10th Cir. 1984) (citations omitted)). The Tenth Circuit set forth six relevant factors:

> "In applying the economic reality test, courts generally look at (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business."

*Id.* (quoting *Baker v. Flint Eng'g & Constr. Co*., 137 F.3d 1436, 1440 (10th Cir. 1998)). The test "also 'includes inquiries into whether the alleged employer has the power to hire and fire

employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records.'" *Id.* (quoting *Baker*, 137 F.3d at 1440). The Tenth Circuit stated that none of these factors is dispositive; instead, the court applies a totality-of-the-circumstances approach. *Id.* at 506.

In *Barlow*, the question was whether the plaintiff was an employee or an independent contractor when he performed janitorial services through a company formed by the plaintiff. Concluding that the factors were divided, and the facts did not indicate that the relationship was materially different from that one company would have with any other cleaning service, the Tenth Circuit affirmed the district court's grant of summary judgment. *Id.*

The Tenth Circuit in *Barlow* made no comment on the relative weights of all of the factors, and gave no indication that a showing on any minimum number of factors would ultimately be required. A totality-of-the-circumstances test is fact intensive and requires assignment of various weights and the exercise of discretion in balancing the factors.

The Complaint alleges that Defendants exerted a very high degree of control over Plaintiffs, with the Provider Agreements enabling DIRECTV to control nearly every facet of the technician's work. Plaintiffs were required to wear a uniform with DIRECTV insignia, to show customers a DIRECTV identification card, and to display DIRECTV insignia on vehicles driven to customers' homes. Plaintiffs were required to hold themselves out as agents of DIRECTV. DIRECTV required Plaintiffs to comply with training and certification requirements. DIRECTV assigned Plaintiffs' daily work schedules, required Plaintiffs to check in before and after each job assigned, and required Plaintiffs to work with DIRECTV employees to activate service. DIRECTV determined whether Plaintiffs' work merited compensation, including setting the rate of pay to the Providers for the Plaintiffs' work. DIRECTV used managers to oversee Plaintiffs'

work, subjecting Plaintiffs to "chargebacks" and/or "rollbacks" based on those reviews.  The very high level of control over Plaintiffs weighs heavily in favor of a finding that Plaintiffs are employees of both Defendants.

The second factor—Plaintiffs' opportunity for profit or loss—also weighs in favor of finding that DIRECTV was Plaintiffs' employer.  The Tenth Circuit stated that "toiling for money on a piecework basis is more like wages than an opportunity for 'profit,'" and those who work on this basis do not share in the profits of the business.  *Dole v. Snell*, 875 F.2d 802, 809 (10th Cir. 1989).  Those paid on a piecework basis do not undertake the risks usually associated with an independent basis.  *See id.*

Although Plaintiffs were required to purchase some supplies—such as screws, poles, concrete, and cables—a worker's provision of his own tools or equipment does not mean that the worker is an independent contractor rather than an employee.  *See id.* at 810.  An "investment" in the business, under the third factor, means large capital expenditures, such as risk capital and capital investments.  *Id.*

Plaintiffs allege that they worked as technicians for DIRECTV for periods of six to nineteen months.  The number of hours worked per week implies that Plaintiffs worked only at these jobs during those periods.  These allegations would allow a reasonable inference that Plaintiffs were more like employees (with a continuous or indefinite relationship in only one job) than independent contractors (with a fixed employment period and transfer from place to place).  *See id.*

With regard to the fifth factor—the degree of skill required—Plaintiffs allege that they were required to train and obtain certification to perform installations according to methods and

14

standards set by DIRECTV.  Plaintiffs allege that they were not given meaningful discretion in performing installations for DIRECTV.

*Barlow* also listed additional factors to be considered:  "whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records."  *Barlow*, 703 F.3d at 506 (internal quotation marks omitted).  It appears that hiring and firing was done at the Providers' level, and the Providers administered payroll, provided Plaintiffs with paychecks, and presumably maintained employment records.  As discussed above, the Complaint alleges that DIRECTV exercised a very high degree of control over Plaintiffs' work schedules and conditions of employment, and exercised extensive supervision of Plaintiffs.  The Complaint alleges that DIRECTV determined whether Plaintiffs' work merited compensation and set the rate of pay for Plaintiffs' work.  Except for the power to hire and fire and the maintenance of employment records, Plaintiffs' allegations regarding these additional factors support a conclusion that Defendants are joint employers.

Defendants also argue, without specific citation to authority, that Plaintiffs were required to name their direct employer.  [Doc. 13, pp. 16-17]  The Court concludes that the absence of any additional parties does not defeat Plaintiffs' claims.  *See* 29 C.F.R. § 791.2(a) (liability for joint employers is joint and several).

The Court is particularly persuaded by the allegations of extensive control and supervision of Plaintiffs' work.  Based on the totality of the circumstances, the Court concludes that the Complaint alleges sufficient facts to plausibly show that Plaintiffs were employees of Defendants.

### III. Statute of Limitations

A claim under the FLSA must be brought "within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited" by the FLSA.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  "Reckless disregard can be shown through 'action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"  *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011) (quoting *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 68 (2007)).

Defendants argue that the Complaint does not plead sufficient facts for a willful violation as to MasTec.  But the Complaint alleges that DIRECTV enacted a "fissured employment" scheme for the purpose of avoiding the obligations imposed by the FLSA; the Complaint alleges that such a scheme is "highly profitable" for the company, but "causes rampant violations of wage-and-hour laws."  [Doc. 1, pp. 1-2 & nn.1-2]  The Complaint alleges that MasTec participated in and enabled this "fissured employment" scheme.  The Complaint alleges that "the Provider Network is purposefully designed to exercise the right of control over its technician corps while avoiding the responsibility of complying with the requirements of the FLSA," and that DIRECTV's "control over its purportedly independent provider partners is integral to its fissured employment scheme."  [Doc. 1, p. 7, ¶¶ 26-27]  The Complaint further alleges that the Providers are not actually independent, but allow themselves to be controlled by DIRECTV in order to effectuate this scheme.  [Doc. 1, pp. 7-9]  The Complaint alleges that both DIRECTV

and the Provider "acted willfully and knew or showed reckless disregard" in violating the FLSA. [Doc. 1, p. 17, ¶¶ 80-83]

The Court recognizes that some of these points constitute conclusory or legal conclusions, not entitled to be accepted as true.  Reading the Complaint as a whole, however, the Court concludes that it contains sufficient factual allegations that the entire scheme, in which MasTec was an essential participant, constituted a deliberate attempt to avoid the responsibility of complying with the FLSA.  Taking the factual allegations as true, the Court concludes that the Complaint plausibly suggests that MasTec (along with DIRECTV) "either knew or showed reckless disregard for the matter of whether its conduct was prohibited" by the FLSA.  The allegations are sufficient to raise the issue of willfulness above mere speculation, under the applicable standard of review.

The Court concludes that at this stage of the proceeding, it is proper to treat the three-year statute of limitations as applicable.  The Court therefore denies Defendants' motion to dismiss on this ground.

**IT IS THEREFORE ORDERED that:**

(1)  *Defendants' Motion To Dismiss Plaintiffs' Complaint* [Doc. 12] is **DENIED**, and

(2)  *Plaintiffs' Conditional Motion for Time Within Which To Seek Leave To Amend Should Court Grant Defendants' Motion To Dismiss* [Doc. 29] is **DENIED AS MOOT**.

**UNITED STATES DISTRICT JUDGE**